UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DEMING SMITH, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 5: 13-219-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| WALLE CORPORATION | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Defendant. | ) | |

*** *** *** ***

Defendant Walle Corporation ("Walle") has moved for summary judgment on Plaintiff Deming Smith's claims for age-related discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344, *et seq*. [Record No. 10][1] In addition to a hostile work environment claim, Smith alleges that Walle discriminated against him because of his age by giving his younger co-workers a raise that he was denied and by terminating his employment. Smith further alleges that, after he filed a discrimination complaint, Walle retaliated against him by transferring him to a maintenance position and by terminating his employment. For the reasons outlined below, the Court will grant summary judgment on Smith's claim for age discrimination based on his termination and Smith's hostile work environment claim. However, Walle's motion for summary judgment on all remaining claims will be denied.

---

[1] The Court, sua sponte, allowed Smith to supplement the record with evidence that could be considered under Fed. R. Civ. P. 56(c). [Record No. 32] Smith did so. [Record No. 33]

-1-

# I.

Smith was 68 years old when he was hired as a Finishing Technician at Walle on May 24, 2011. [Record No. 10-2, p. 11] Smith's initial base rate of pay was $8.55 per hour. He received five pay raises totaling $1.95 per hour during his 24 months with Walle and his final rate of pay was $10.50 per hour. [Record No. 14-1] The first increase in his salary was $0.26 per hour as third shift supplemental pay, increasing his pay rate to $8.81 per hour. [Record No. 14-1] On October 9, 2011, Smith's salary was increased to $9.27 per hour. [Record No. 14-1] The first alleged pay increase discrepancy occurred on or around January 29, 2012. Smith claims that all of the other employees on his shift received a pay increase of $0.50 per hour while Smith only received an increase of $0.40. After Smith complained that his raise was less than that of his co-workers, he was eventually given a $0.10 per hour raise. It is unclear from the record whether this pay increase was applied retroactively.

The largest pay increase discrepancy occurred in February of 2012. Smith learned that the "younger" workers received a pay increase of $1.50 per hour. [Record No. 10-2, p. 9–10] Allegedly, this was done to keep younger workers from being hired by a new, neighboring plant facility. [Shane Lurty Statement, Record Nos. 14-2, 14-3, 33-1] This pay discrepancy, Smith argues, was based on his age.[2] Smith complained to his supervisors and higher management. [Record No. 14-4, pp. 3–4] Eventually, in May of 2012, Smith received his largest raise, which was $ 0.75 per hour. [Record No. 14-1] According to his

---

2    Smith made several statements that contradict this position in his deposition. When asked "the motive, for lack of a better word, of Walle discriminating against you because of your age," Smith responded that "it was a mistake. Nobody did it on purpose . . ." [Record 10-2, p. 11] However, he went on to describe Walle's motivation for paying younger employees higher wages was to keep the younger guys from being hired at competing factories. [Id.] Walle contends that, because of his age, he was a "non-thought. They didn't care if I stayed or went. I wasn't 20 years old . . ." [Id.]

Compensation History, this raise was a "salary adjustment for parity."[3]  [Record No. 14-1]  Unsatisfied with the raise, Smith continued to complain.  When he did not receive the full $1.50 per hour raise that the other younger employees received, Smith filed a complaint with the local agency of the Equal Employment Opportunity Commission on June 11, 2012.  [Record 10-2, p. 38]

After the filing of the EEOC Complaint, Smith was disciplined for placing labels in the incorrect boxes or incorrect pallet.[4]  [Record No. 10-2, pp. 17–18]  Placing the labels was part of his regular work assignment.  [Record No. 10-2, pp. 17–18]  Smith denies making these mistakes, pointing out that it may have been someone on another shift.  [Record No. 10-2, pp. 17–18]  A meeting was held in September 2012 to discuss these incidents.  Another employee was also disciplined for one of the mistakes, but she blamed Smith for the remaining errors.  [Record No. 10-2, pp. 18, 52–53]  It is unclear whether Smith admitted to making one of the three mistakes.  While he denied making the mistakes at his deposition, at the meeting regarding the incidents, "he blamed one of the mistakes on the way the boxes were aligned to receive the product. . . . He did not know how the other two most significant mistakes were made."  [Record No. 10-2, p. 53]

---

3  Another note, just below the notation referencing "parity," states, "see documentation."  [Record No. 14-1]  Despite the fact that both parties rely on this Compensation History in support of their respective positions, neither party submitted this additional documentation, or, if it was submitted, neither party labeled it as such.

4  The exact timing of these alleged mistakes, and subsequent "write-ups" is unclear from the record.  There is a memorandum, dated September 13, 2012, summarizing the meeting between supervisors, Smith, and the other employee involved with the mistakes, Amanda Sanders.  [Record No. 10-2, pp 52–53]  The meeting itself occurred on September 11, 2012.  [*Id.*]  While the memorandum indicates that "[c]opies of each respective disciplinary action are attached to this document for any necessary reference," the disciplinary actions were not submitted to the Court for review.  [*Id.*, p. 53]  It would appear from other statements in the record, however, that the three disciplinary actions cited by the parties occurred in close succession to one another and to Smith's transfer.  [*See* Record No. 10-2, pp. 17–18, 52–53.]

Consequently, in September 2012, Smith was transferred to an American Institute of Bakeries ("AIB") position. The transfer neither reduced Smith's pay nor changed his benefits. However, Smith considered the AIB position inferior to that of a Finishing Technician. [Record No. 10-2, p. 16–17] He alleges that this transfer was in retaliation for his earlier complaint about the discrepancy in pay increase and EEOC filing. Walle contends that the transfer was a re-assignment based upon the three mistakes with the labels. [*See* Record No. 10-2, p. 53] Smith describes the AIB Specialist position as a maintenance position in which he removed weeds and scraped the floors. [Record No. 10-2, p. 16–17] He was also required to clean old trash from around the dumpster and inspect ceiling tiles for signs of rodents. [Record No. 14-4, p. 2] As a result, Smith filed a second, related charge with the EEOC on November 28, 2012. [Record 10-2, p. 43] In its determination on December 19, 2012, the EEOC found reasonable cause to believe that Walle had given Smith a raise in pay similar to Smith's comparables. [Record No. 14-9] Smith was issued a right to sue letter on or about March 27, 2013.

Following his transfer to the AIB position, Smith was again disciplined on several occasions based on alleged violations of Walle's policy and his supervisors' instructions. [Record 10-4, p. 1–2] Smith's supervisor Sheila Stacy stated that Smith was often chatting with employees outside of his assigned work areas, such as the Quality Engineer's office and maintenance shop. [*Id.*] Despite warnings not to go to the maintenance shop at all, Smith was seen in the maintenance shop by Stacy and other supervisors. [Record No. 10-4, pp. 2, 4–7] Later, on May 2, 2013, Smith failed to exit the premises during a fire drill. [Record No. 10-4, p. 8–9] At the time, he was in the mezzanine. The parties disagree regarding whether Smith was authorized to be in the mezzanine. [Record No. 10-4, p. 8–9; Record

Nos. 14-7, 33-2] Earl Renzenbrink, a Quality Engineer, who worked under Sheila Stacy and was responsible for overseeing Smith on a daily basis, said that he authorized Smith to be in the mezzanine at the time of the fire drill. [Record Nos. 14-7, 33-2]

As a result of Smith's failure to evacuate during the fire drill, Smith was presented with a written warning on May 2, 2013. [Record No. 10-2, pp. 49–50] Smith was warned that if his "sense of urgency" and "initiative" did not improve, and his socialization with other employees in unauthorized areas did not improve, he would be subject to a final warning and termination. [Record Nos. 10-4, pp. 8–9; 10-2, pp. 49–50] Walle submitted several statements from supervisors evidencing occasions after May 2, 2013 that Smith was outside of his designated work area. [Record No.10-2, pp.45–48] On June 10, 2013, there were two separate notes indicating two occasions on the same day on which Smith was alleged to have been outside of his designated work zones. [Record No.10-2, pp.47–48]

On June 10, 2013, Walle terminated Smith's employment. Stacy, Smith's supervisor, states in her affidavit that Smith's termination was due to "his failure to stay on task and avoid being in areas where he had no reason to be and areas he had been ordered to avoid." [Record 10-4, p. 2] There were no additional formal written notices or warnings to Smith prior to his termination.

Smith submits a statement from Shane Lurty, alleging that Day-Shift Supervisor Natalie Bailey told Lurty that the General Manager of Walle Corporation considered Smith to be a "crazy old man." [Record Nos. 14-2, 33-1] Lurty also submits an additional statement in which Lurty alleges that Production Manager Allen Dummitt stated that Smith was "too old" and "would probably only be here for another year or two at most" as the reason that Smith was not given raises similar to his co-workers. [Record Nos. 14-3, 33-1]

Additionally, Smith submits a statement from Renzenbrink indicating that Smith was, in fact, authorized to be in certain locations that Walle contends Smith was prohibited from entering. [Record Nos. 14-7, 33-2] Walle terminated Smith's employment based, at least in part, on Smith's presence in these areas.

As alleged, the facts bear on three separate alleged discriminatory acts against Smith. First, he alleges a discrepancy in pay raise when compared to his younger counterparts. Next, he alleges his termination was based on his age. He also alleges retaliation with respect to his transfer to the AIB position and with respect to his termination from Walle. Finally, he alleges, without substantial support, a claim of hostile work environment.

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**III.**

A. Age Discrimination

The KCRA makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge . . . or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age." KRS § 344.040(1). The Supreme Court of Kentucky interprets the KCRA consistently with its federal anti-discrimination counterparts. *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). In this case, the KCRA's federal counterparts are the Age Discrimination in Employment Act of 1967 ("ADEA"), 19 U.S.C. §§ 621–34, and Title VII. *Id.*; *see Grosjean v. First Energy Corp*, 349 F.3d 332, 335 (6th Cir. 2003).

A plaintiff may establish a claim for age discrimination by offering either direct or circumstantial evidence of discrimination. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Health Care Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Smith purports to present direct and circumstantial evidence [Record No. 13, p. 6], but relies exclusively on the *McDonnell Douglas* burden-shifting approach, without discussion of the direct evidence analysis.[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). Accordingly, the

---

5    Direct evidence consists of "evidence from the lips of the defendant proclaiming his or her . . . animus." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (internal quotations and citations omitted). The comments submitted by Lurty do not sufficiently demonstrate evidence of statement by a decision maker necessary to meet the requirements for direct evidence. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002); *Reed v. American Cellular*, 2014 WL 3924564, *4, __ F. Supp. 2d __ (M.D. Tenn. August 11, 2014).

Court will apply the *McDonnell Douglas* standard for circumstantial evidence herein. *See Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 855 n.7 (M.D. Tn. 2012)

Under the *McDonnell Douglas* framework, Smith must show that he was: (i) a member of a protected class; (ii) was subjected to an adverse employment action; (iii) qualified for the position he held; and (iv) treated differently than a similarly situated individual outside the protected class. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (applying *McDonnell Douglas* test to Title VII claims); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001) (applying *McDonnell Douglas* test to ADEA case). If the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). And if the defendant provides a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to show that the reason given by the defendant was merely a pretext for decisions actually motivated by unlawful bias. *Id.*

As an initial matter, Smith's age qualifies him as a member of a protected class. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). Generally, a plaintiff must demonstrate that he was performing at a level which meets his employer's expectations to satisfy the qualification prong of the *prima facie* case. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 2000). The Sixth Circuit has warned that the issue of qualification should be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision to terminate the employee. *Id*. at 663. There is no evidence that Smith was not qualified as a Finishing Technician, the position he held at the time of the discriminatory pay increase.

Finally, Smith must show either that Walle replaced him with a non-protected worker or treated similarly-situated, non-protected employees more favorably. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307 (6th Cir. 2007); *Noble v. Brinker Int'l., Inc.*, 391 F.3d 715 (6th Cir. 2004). The *prima facie* stage is "not onerous" and is "easily met." *Cline*, 206 F.3d at 660.

### 1. Wage Increase

Regarding Smith's allegation that other employees received a raise when he did not, a disparate pay increase may be an adverse action. *See Szeinbach v. Ohio State Univ.*, 493 F.App'x 690, 693–94 (6th Cir. 2012). Thus, Smith has met the first three steps of a prima facie case. But the difficulty lies with the last element of Smith's prima facie case.

Smith alleges that younger employees were given raises of $1.50 to prevent them from being hired away from Walle by another factory down the street. Smith testified at his deposition that he learned of the alleged $1.50 raise through Shane Lurty, who had spoken with Allen Dummit. [Record No. 10-2, p. 11] Smith did not identify the recipients of the wage increase. [*Id.*] However, he alleges that everyone that he worked with was younger than him. [*Id.*] A review of the list of ages of other Finishing Technicians at Walle confirms that, indeed, Smith was the oldest employee in that position at the time. [Record No. 10-3, p. 4] Lurty's statement also suggests that other employees were given a $1.50 per hour raise and that the raise was based, in part, on the fact that Walle was more concerned with losing younger employees to a neighboring facility. While one would assume that Walle has payroll records demonstrating this increase for other employees, neither party filed such evidence for this Court's consideration. Smith has, however, submitted his Compensation

History, which references "parity" as an explanation for the $0.75 per hour increase in May 2012. [Record No. 14-1]

Walle neither confirms nor denies giving other, younger employees a raise of $1.50 as alleged. Likewise, it does not offer a reason for providing the raise. Instead, Walle argues that Smith's pay was commensurate with other Finishing Technicians who were employed by Walle for 12 to 24 months. [Record 10-3, p. 2] Smith had been employed for 13 months and earning $10.25 per hour as of June 22, 2012. The average rate of pay for similarly situated employees was $10.20 per hour. [*Id.*] However, this comparison is not probative of any issue before the Court. This information does not compare wage increases at the relevant time, based upon relevant data. Walle's claim is not that he was paid less than his younger counterparts, but that they were given a raise that he was denied based upon his age.

Additionally, this information does not cover the relevant time period. Walle compares payroll data as of June 22, 2012, rather than payroll information as of February, 2012, when raises were awarded. Thus, this data was analyzed after Smith complained and was awarded the "parity" increase. Before that time, his per hour wage would have been $0.75 less and the comparison with his co-workers may not have been as favorable. This information also omits a comparison by shift, which is another relevant factor.[6] In the absence of any evidence to the contrary, and considering the payroll records, together with Lurty's statements, and making all reasonable references in a light most favorable to Smith, the Court finds that Smith has offered sufficient evidence that he was treated differently than his younger co-workers.

---

6   Smith testified employees were compensated differently based upon which shift they worked. [Record No. 10-2, pp 82–83]

As Smith has established a prima facie case, the burden shifts to Walle to articulate a legitimate, nondiscriminatory reason for giving Smith's coworkers a pay raise that he was not given. However, Walle has not offered any reason for its failure to give Smith a comparable pay raise. Walle has articulated its alleged basis for transferring Smith to the AIB position and for terminating his employment, but neglected to offer any basis for its failure to give Smith a comparable wage increase in early 2012. In the absence of any justification for the disparate raise, Smith's claim survives under the *McDonell Douglas* framework. Accordingly, Walle's motion for summary judgment on this claim will be denied.

### 2. Termination From AIB Specialist Position

To show a prima facie case of discrimination in the context of a termination, a plaintiff must show that he was replaced by a person outside of the protected class. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). In the context of age discrimination cases, that requirement is modified to "require replacement not by a person outside of the protected class, but merely replacement by a significantly younger person." *Id.* (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 352–53 (6th Cir. 1997). Smith has made no effort to allege or demonstrate that he was replaced by a significantly younger employee or new hire when he was terminated from the AIB Specialist position. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 284–84 (6th Cir. 2012). "The prima facie case requires evidence adequate to create an inference that an employment decision was based on illegal discriminatory criterion . . . . [Such an] inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* Without any

-11-

allegation or evidence to support the fourth prong of the prima facie case on this issue, Walle's motion for summary judgment will be granted.

### B. Retaliation

To establish a retaliation claim, Smith must demonstrate that: (i) he engaged in a protected activity; (ii) Walle was aware of the protected activity; (iii) Walle took an adverse employment action; and (iv) there was a causal connection between the protected activity and the adverse employment action. *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). By filing an EEOC Complaint, Smith engaged in a protected activity of which Walle was aware at the time that Smith was transferred to the AIB position and at the time Smith was terminated.

Smith filed his EEOC Complaint on June 11, 2012. Within three months, Smith had been written-up and was disciplined through a re-assignment to the AIB position. Once in that position, Smith was written-up several times. Plaintiff filed a charge of retaliation, dated November 28, 2012, with EEOC. The EEOC issued its determination finding reasonable cause to believe that Walle had not increased his pay at a rate similar to other comparable employees. Smith was given his right to sue letter on or about March 27, 2013. Smith was terminated on June 10, 2013. This is almost exactly one year after he first filed his EEOC Complaint.

#### 1. Transfer

Temporal proximity alone may be enough to establish a causal connection. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014). Where some time has elapsed between the protected activity and the subsequent adverse action, however, the employee must also show other evidence of retaliatory conduct to establish causality. *Id.*

Prior cases have found that three months is sufficient to establish causation due to temporal proximity. *Hamilton v. Gen'l Elec. Co.*, 556 F.3d 428, 435–36 (6th Cir. 2009) (finding the combination of increased scrutiny by plaintiff's superiors, coupled with temporal proximity with EEOC filing to be sufficient to establish causal nexus); *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004).

With respect to Smith's transfer to the AIB position, the Court finds that a reasonable jury could conclude that the transfer was an adverse employment action. A materially adverse change may be demonstrated "by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002). Smith's hours were eventually reduced in after the transfer because he was not permitted to work overtime. While he testified that he did not mind the reduced hours, he thought that the reduction in hours was intended to be retaliatory. The reassignment did not result in a loss in wages or benefits. However, the transfer itself was caused by the mistakes that he denied making after he filed the EEOC complaint. The summary of the September 2012 meeting indicates that "formal disciplinary action will be documented regarding the three primary mistakes and that Mr. Smith will be assigned to another capacity within the plant where he is less vulnerable to make such mistakes as addressed in the meeting." [Record No. 10-2, p. 53]

Walle relies on the unpublished Court of Appeals decision in *Reed v. Bluegrass Regional Psychiatric Servs., Inc.*, 2009 WL 1257675 (Ky. App. May 8, 2009) to demonstrate that Smith's transfer was not an adverse action. In *Reed*, the plaintiff was transferred from

the hospital's dietary department to its laundry department, which was a "dirtier than her dietary job because it involved handling linens that had human excrement and disease." *Id.* at *4. That court found that the transfer was not an adverse action. However, *Reed* is distinguishable. There was evidence that the plaintiff in that case agreed to the transfer, that she was happy with the transfer and that the laundry position required similar knowledge, skills and physical demands of the prior position. *Id.* There is no such evidence here. Smith was not pleased with the transfer to the position of AIB specialist and, while the benefits and hours may have been similar to the Finishing Technician position, there is evidence from which a reasonable jury may conclude that the job duties were more than a "mere inconvenience."

The new job duties were different those to which he was accustomed and they were, in his eyes, demeaning. The AIB Specialist condition required Smith to pull weeds, dust the plant, clean around the outdoor dumpsters, inspect ceiling tiles for evidence of rodents, and to clean the floor on his hands and knees. This was not a revision of earlier duties, but an entirely different position. Walle submits information from June 2012 indicating, it argues, that Smith was paid more than his co-workers who were employed in the same position for the same amount of time, but then, three months later and after the EEOC complaint, Walle transferred him out of the Finishing Technician position altogether. It appears from the record before this Court that a jury may conclude that Smith was subjected to additional scrutiny following the EEOC Complaint, which resulted in reassignment to a new position with "significantly diminished material responsibilities."

Walle's proffered basis for transferring Smith was the three alleged mistakes for which he and another employee were disciplined. A plaintiff may establish pretext "by

showing that the [defendant's] proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Smith and the other employee were alleged to have made the same or similar mistakes. However, only Smith was transferred. It appears from the memorandum that Smith's superiors blamed him for additional mistakes, despite his denials and the fact his only "write ups" immediately followed the EEOC Complaint. *See Seeger v. Cincinnati Bell Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) ("[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence."). Considering all of the circumstances and the record as a whole, there is sufficient evidence from which a reasonable jury could find that these alleged mistakes were pretext for retaliation.

### 2. Final Termination

Smith's termination was an adverse employment action. The first three elements of Smith's prima facie case of retaliation being met, the Court will turn to whether Smith can establish causation. Smith's termination did not occur until almost a year after his initial EEOC Complaint was filed. "[W]here some time elapses between when the employer learns of the protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525.

A year is a significant lapse of time between the initial filing of the EEOC Complaint and Smith's termination. However, Smith has presented other evidence of retaliatory conduct in the intervening year. In *Little*, the Sixth Circuit found that a lapse of one year and three month was sufficient, when coupled with other evidence of retaliatory conduct, such as

suspension and other disciplinary action. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364–65 (6th Cir. 2001); *See Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir. 1999); *Harrison v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 80 F.3d 1107 (6th 1996). After employment of about thirteen months, Smith was suddenly written-up following his EEOC Complaint and disciplined for mistakes made in his position as a Finishing Technician, then transferred to maintenance position. Smith was kept in this maintenance position during subsequent EEOC Complaints. Based on the transfer (that qualifies under the circumstances as additional retaliatory conduct), Smith has sufficiently established an issue of material fact for the jury on the issue of causation for his termination.

Walle cites numerous circumstances of Smith being in areas outside of his designated work area and talking with other employees as a legitimate, non-retaliatory basis for Smith's termination. A plaintiff may establish pretext "by showing that the [defendant's] proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). To survive summary judgment, Smith must "produce enough evidence to support a prima facie case and to rebut, but not to disprove, the [Walle's] proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012). "In analyzing whether the stated reason is merely pretextual, we bear in mind that '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n. 4 (6th Cir.2009)). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an

inference of discrimination at trial." *Chen v. Dow Chem. Co.*, 580 F.3d at 400 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

The incident leading to Smith's formal written warning occurred on May 2, 2013, when Smith was working in the mezzanine and missed the fire drill. [Record No. 10-4] Earl Renzenbrink was responsible for writing-up the AIB work assignments at the plant. [Record Nos. 14-7, 33-2] He reported directly to Sheila Stacy, the supervisor who disciplined and ultimately terminated Smith.[7] [*Id.*] Renzenbrink's statements directly contradict Stacy's account of the incident. [*Id.*] Renzenbrink alleges that he specifically directed Smith to work in the mezzanine that day. [*Id.*] According to Renzenbrink, he had written a work order requiring Smith to work in the mezzanine on that day and others. [*Id.*] Considering the importance of this event in Walle's determination to terminate Smith's employment, Renzenbrink's statements are sufficient to create a genuine issue as to whether Smith was disciplined for being in locations where he was permitted to be based upon a work order from Renzenbrink.

Viewing the facts and making all reasonable inferences in a light most favorable to Smith, as required at this stage of the proceedings, Smith has established issues of material fact relating to whether Walle retaliated against him for filing the EEOC Complaint. Accordingly, Walle's motion for summary judgment on Smith's claims of retaliation will be denied.

---

7 Walle has not demonstrated that the honest belief rule applies at this juncture. "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse action." *Seeger*, 681 F.3d at 285. Assuming Renzenbrink's assertions to be true, Stacy should have known, or had reason to know, that Renzenbrink had authorized Smith to be in the mezzanine and other areas.

### C. Hostile Workplace

Smith summarily argues, in three sentences, that he was subjected to terms and conditions of employment that created a hostile work environment on the basis of his age. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citations omitted). Moreover, based upon the Court's review of the record, Smith has not demonstrated any evidence to suggest that he was the victim of harassment related to his age that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). Walle will be granted summary judgment on the claim that it created a hostile work environment for Smith under the KCRA.

### D. Damages

Walle argues that Smith should be precluded from presenting evidence on humiliation and emotional distress because Smith has not identified an expert to testify on such damages. Walle has made a similar argument in its motion *in limine* pending before this Court, and the matter will be addressed in the Court's ruling on that motion.

### IV.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendant Walle Corporation's motion for summary judgment [Record No 10] is **GRANTED**, in part, with respect to Plaintiff Deming Smith's claim for age discrimination based on his termination from the AIB Specialist Position and Smith's hostile work environment claim.

2. Defendant's motion for summary judgment [Record No 10] will be **DENIED** with respect to the remaining claims.

This 20th day of October, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge