UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DEMING SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-219-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| WALLE CORPORATION | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant Walle Corporation's ("Walle") motion *in limine* requesting this Court to limit certain evidence at trial and to determine whether Plaintiff Deming Smith is entitled to certain categories of damages. [Record No. 17] For the reasons set forth below, Walle's motion *in limine* will be granted, in part, and denied, in part.

**I.**

Smith claims age-related discrimination by Walle in violation of the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344, *et seq*. Following the Court's resolution of Walle's motion for summary judgment, several claims remain for trial, including: whether Walle discriminated against Smith by awarding raises to Smith's younger counterparts while denying those raises to Smith because of his age; and whether Smith was transferred and eventually terminated because he filed an EEOC Complaint regarding discrepancies in wage increases.

Through its motion, Walle seeks to exclude at trial: (i) certain testimony by Smith based on speculation; (ii) alleged hearsay statements of witness Shane Lurty; and (iii) the conclusions and findings of the Equal Employment Opportunity Commission ("EEOC") and Kentucky Unemployment Insurance Commission ("KUIC"). Walle also argues that Smith should be precluded from introducing damages of emotional distress at trial and that Smith is not entitled to front pay.

## II.

While the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to a district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Although a party can ask the Court to make an *in limine* ruling on evidentiary matters, it is within the Court's discretion to do so. In short, there is no right to an *in limine* ruling. *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988). In fact, a ruling on a motion *in limine* is nothing more than a preliminary opinion which allows the parties to better formulate their trial strategy. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994); *Gresh v. Waste Servs. of America*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) ("The district judge . . . has the sound discretion to alter or amend a previous in limine ruling at trial."). In fact, a court may "exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Indiana Ins. Co. v. Gen. Elec., Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Unless this high standard is met, rulings will be deferred until trial. *Id.*

## III.

**A. Testimony based on speculation will be excluded.**

Smith's deposition testimony regarding Walle's motivation for age-based discrimination is largely based on what he "surmised," or "conjecture," or his "feelings" about what was happening and why. Walle argues that testimony based on this speculation should be excluded during trial. Walle correctly argues that Smith must come forward with more than speculation or conjecture in support of his claims. *See Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). However, Smith has come forward with sufficient evidence, above and beyond his own testimony, to submit his claims to the jury. Whether Smith's testimony is admissible remains an issue separate from whether Smith has produced sufficient evidence to carry his burden to overcome summary judgment.

While, alone, Smith's testimony referenced by Walle may be inadmissible, the Court can anticipate a number of circumstances in which a proper foundation could be established to allow Smith to provide some form of opinion testimony at trial. To the extent that Smith intends to testify at trial without the proper factual evidentiary basis and outside of the parameters of relevant admissible opinion testimony as described in Federal Rules of Evidence 401, 403 and 701, his testimony will be excluded. Nonetheless, the Court recognizes the "practical difficulty in ruling on such motions [in] the absence of context that comes when the challenged evidence is presented with the other proofs at trial." *Figgins v. Advance America Cash Advance Ctrs.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007).

In short, Walle has failed to show that there is no set of circumstances under which Smith may present opinion testimony during trial. The Court will defer ruling "until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co.*, 326 F. Supp. 2d at 846. Accordingly, the Court declines Walle's invitation to exclude Smith's testimony *in limine*.

### 2. **Hearsay statements by Shane Lurty**

In support of his summary judgment motion, Smith submitted two written statements by Shane Lurty which contained statements attributed to Allen Dummit and Natalie Bailey regarding Smith and the basis for the wage increase discrepancy. [Record Nos. 14-2, 14-3, 33-1] Walle argues that these statements are inadmissible hearsay and, further, that they are isolated remarks by nondecisionmakers, meaning that they are not relevant to the issues before the jury. Smith counters that the necessary parties will be available at trial and argues that the speakers of the statements were involved in the decision-making process, making their testimony relevant to the issues before the Court.

The first statement at issue occurred during a conversation between Natalie Bailey and Lurty in which Bailey stated that the General Manager of Walle (Jim Combs), "already thinks that [Smith] is a 'crazy old man.'"[1] [Record Nos. 14-2, 14-3] The statement was made with reference to Smith's initial complaints that he received a $0.40 raise when his co-workers received $0.50 raises. Smith had discussed the raise discrepancy with several supervisors and eventually Combs, the General Manager. Smith was subsequently given the additional $0.10 per hour raise.

The second statement was made by the production manager, Allen Dummit, to Lurty[2] during their conversation about the second, larger pay increase discrepancy. [Record Nos. 14-2, 14-3] Lurty had asked Dummit whether other employees had received $1.00 to $1.50 raises. In response, Dummit admitted that "we" gave some employees raises to keep them

---

[1] There are slight variations between Lurty's two written statements. [Record Nos. 14-2, 14-3] For purposes of this motion, however, the variations are not material.

[2] At the time of this statement, it appears that Lurty had been promoted to the position of a supervisor.

from being hired by a nearby factory that was paying a higher rate. Dummit explained further that Smith was not given a raise because he was "too old and would probably be here for another year or two at most." [Record No. 14-3]

Walle argues that Smith has not demonstrated that Bailey and Dummit were decisionmakers and their statements are, therefore, inadmissible. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759–60 (6th Cir. 2000) (finding racial statements by coworkers outside of relevant time period were inadmissible); *Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152, 156–57 (6th Cir. 1998) (finding that testimony regarding reason for termination for other employees, who did not share supervisors and were not in the same location, was not relevant to the plaintiff, needlessly injected "smoking gun" type evidence and was inadmissible). Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Geiger v. Tower Auto.*, 579 F.3d 614, 620–21 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)) (discussing whether certain statements were sufficient to demonstrate animus for purposes of summary judgment).

The parties disagree regarding whether, and to what extent, Natalie Bailey and Allen Dummit were involved in any decisions regarding Smith's pay rate. There is insufficient information in the record for the Court to determine Bailey and Dummit's involvement in the decision process as a matter of law. Bailey was Smith's direct supervisor. However, the statement that Smith was a crazy old man allegedly originated with the General Manager for Walle. Additionally, Dummit's involvement in the initial or subsequent decisions regarding the pay increases is also unclear.

To the extent that these statements were made by decisionmakers they are relevant to an issue before the Court. These statements bear upon the rationale for not giving Walle the same alleged raises as his coworkers. Thus, to the extent that the two sentiments expressed by Bailey and Dummit were made by supervisors who were involved in the decision process, they are pertinent to Smith's cause of action and will not be excluded on relevancy grounds. *Geiger*, 579 F.3d at 620–21.

Second, Walle argues that the statements are inadmissible hearsay because "Lurty is merely relating what he supposedly heard other say" and Smith has not "claimed, much less established, that the third parties who supposedly made the statement were authorized to make the statements on behalf of Walle" or within the scope of their relationship with Walle. [*See* Record No. 17-1.] Walle argues that even if the statement were nonhearsay statements under 801, they are isolated statements and would be unduly prejudicial. *See Wilson v. Budco*, 762 F.Supp.2d 1047, 1060–61 (E.D. Mich. 2011); *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) (discussing application of Rule 801(d)(2)(D)). Smith, generally, argues that the necessary parties will be made available at trial. Again, the alleged statements, if made by decisionmakers or sufficient to demonstrate their state of mind, bear directly on whether Walle discriminated against Smith when giving raises to other employees. *Id.* Thus, without the benefit of the context of trial, this Court cannot determine whether these statements are nonhearsay or, if they are hearsay, whether a hearsay exception would apply.

The Court notes that Smith has not provided substantial factual support in the record for admission of these statements. Further, Smith has made only a superficial effort to argue for their admissibility in his response. Nonetheless, Walle has failed to show that there is

-6-

absolutely no set of circumstances under which Smith may introduce the evidence contained in Lurty's statements. In such circumstances, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins.*, 326 F. Supp. 2d at 846. Thus, Walle's motion *in limine* to exclude Lurty's statements will be denied.

### 3. Damages for Emotional Distress

Walle also argues that claims of emotional distress must be supported by medical or scientific proof. In support, Walle relies on several cases requiring expert evidence to show damages for emotional distress relating to state common law claims. *See Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012); *Sergent v. ICG Knott Cnty., LLC*, 2013 WL 64512120 (E.D. Ky. 2013); *Farmer v. Dixon Elec. Sys. & Contracting, Inc.*, 2013 WL 2405547 (E.D. Ky. 2013). The common law negligence claims discussed, specifically intentional and negligent infliction of emotional distress, necessarily require a plaintiff to demonstrate "severe or serious emotional injury." *Osborne*, 399 S.W.3d at 17. However, Walle does not point to any cases expanding *Osborne* to apply to statutory causes of action such as the KCRA. Additionally, the KCRA does not require that the plaintiff make the higher showing of "severe or serious emotional injury." *See Kentucky Comm'n of Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981) (allowing damages for embarrassment and humiliation in KCRA claim); *Core Medical, LLC v. Schroeder*, No. 2009-CA-670, 2010 WL 2867820, at *6-7 (Ky. Ct. App. July 23, 2010) (unpublished) (upholding award of damages for emotional distress and finding that expert testimony not required in KCRA case); *Kentucky Lottery Corp. v. Riles*, Nos. 2004-CA-1053, 2005-CA-335, 2007 WL 1785451, *5 (Ky. Ct. App. June 8, 2007) (noting that the plaintiff did not call any experts in support of her claim for

emotional distress); *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-cv-249, 2014 WL 4914739, at *5 n.1 (W.D. Ky. Sept. 30, 2014) (rejecting argument that statutory bad faith claim required heightened standard of proof necessary for common law negligence claims.). Walle has not pointed to any authority requiring expert proof in support of damages for emotional distress under the KCRA. The Court is not persuaded by Walle's argument that expert evidence is necessary to substantiate a claim for discrimination or retaliation under the KCRA.

Walle further argues that Smith must be precluded from presenting any evidence of damages for emotional distress because he has not presented sufficient evidence to support his claim. Walle relies on a Sixth Circuit case interpreting Michigan law in support of its position that a plaintiff's testimony that he was "upset" and "disappointed" are insufficient as a matter of a law to support an award for emotional distress. *Betts v. Costco Wholesale Club*, 558 F.3d 461, 472 (6th Cir. 2009) (finding that "generalized comments are not sufficient to support an award for emotional distress" under Michigan law). In an unpublished opinion, the Court of Appeals of Kentucky relied upon *Betts* in finding that an amount awarded by the jury to the plaintiff was excessive in light of the evidence presented. *Vinland Energy Operations, LLC v. Engle*, No. 2009-CA-2227-MR, 2011 WL 1706622, at *9–10 (Ky. App. Ct. May 6, 2011). The Court of Appeals of Kentucky noted that evidence of the violation of the KCRA is not sufficient to show damages for emotional distress. To show damages under the KCRA, "there must be evidence of actual humiliation and embarrassment." *Id.* at 9 (citing *Fraser*, 625 S.W.2d 852, 856 (Ky. 1981)).

Smith states that, as a result of Walle's discriminatory actions, he suffered from "financial woes" and was forced to "battle" for unemployment benefits. Further, he claims

that he had never been terminated from a job before his termination from Walle. Thus, "common sense," Smith argues, "dictates that the loss of personal dignity is commonly associated as the result of loss of employment." Smith argues he should be entitled to introduce evidence on this element of damages. The Court disagrees.

While Smith does not have to come forward with expert testimony in support of this claim for damages, he must demonstrate through some competent evidence *actual* emotional distress. While "humiliation and embarrassment lie at the core of the evil" that the KCRA was intended to address, these damages cannot be presumed and sufficient competent evidence is necessary for the factfinder's consideration. *See Fraser*, 625 S.W.2d at 855–56. Here, Smith has not cited to any evidence of his humiliation or embarrassment. This element of damages cannot go to the jury with no more than a "common sense" argument that Smith should have felt a loss of dignity based upon his termination. Evidence of actual humiliation and embarrassment must be introduced to maintain this claim for damages at trial. The Court will preclude any evidence of Smith's damages for emotional distress at trial.

### 4. Front Pay

Walle argues that only actual damages are available under the KCRA and that front pay is not "actual damages." Walle argues that Kentucky Supreme Court "assumed" without deciding that front pay was an available remedy in *Brooks*. *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790 (Ky. 2004). Therefore, the Court is not precluded from finding that front pay is not available under the KCRA. However, *Brooks* has been consistently cited by Kentucky courts as authority for the award of front pay under the KCRA. *Brooks*, 132 S.W.3d at 806 ("[T]he power to award reinstatement appears to fall within the trial court's power to 'enjoin further violations' under KRS 344.450."). "Front

pay . . . is a substitute for reinstatement, an equitable remedy which is specifically provided for by statute, such as the [KCRA]." *Sparks v. Henson*, 2011-CA-423, 2011-CA-518, 2012 WL 5463877, at *8 (Ky. Ct. App. November 9, 2012) (citing *Brooks*, 132 S.W.3d at 806); *see also Burton v. Zwicker & Assocs.*, 577 F. App'x 555, 567 (6th Cir. 2014). Thus, the award of front pay is not precluded, as Walle argues.

However, Walle correctly states that whether to award front pay is an issue for the Court rather than the jury. *Brooks*, 132 S.W. 3d at 806; *Griffin v. Michigan Dep't of Corr.*, 5 F.3d 186, 189 (6th Cir.1993). "Front pay is money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Brooks*, 132 S.W.3d at 806 (citation and quotations omitted). It "either supplements the equitable remedy of reinstatement or acts as a substitute for it, though reinstatement remains the preferable remedy." *Id.*

Evidence regarding front pay may be introduced during trial. *See Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392 (6th Cir. 1993). Smith must provide evidence of "the essential data necessary to calculate a reasonably certain front pay award." *Burton v. Zwicker & Assocs.*, 577 F. App'x 555, 567 (6th Cir. 2014) (quoting *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 407 (6th Cir. 2003)). The Court will determine whether to allow front pay after the evidence is closed and before submitting the matter to the jury. *See Roush*, 10 F.3d at 399; *Figgins*, 482 F. Supp. 2d at 871.

### 5. EEOC & KUIC Findings and Conclusions

Whether to admit the findings of the EEOC with respect to Smith's discrimination claim is within the discretion of the Court. "An EEOC letter of violation is presumptively inadmissible 'because it suggests that preliminarily there is reason to believe that a violation

has taken place and therefore results in unfair prejudice to defendant.'" *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 722–23 (6th Cir. 2002) (quoting *Williams v. The Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997)). Smith seeks to introduce the conclusions of the EEOC and KUIC. [Record Nos. 14-9, 14-11] However, Smith has not cited to any relevant, probative purpose for the admission of these documents. Instead, he simply notes that their admission is within the Court's discretion.

The Court finds that the introduction of the EEOC determination would be more prejudicial than probative for the jury and that there is a high risk of confusion for the jury. Smith has not made a sufficient argument to overcome the presumption of inadmissibility. Applying similar reasoning, the Court will exclude admission of the findings of the KUIC. The "sole function" of the KUIC is to determine if the "affected employee meets the statutory criteria to qualify for benefits, not to inquire or make judgment regarding the reasons behind an employee's termination." *Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky. Ct. App. 1991). Accordingly, Walle's motion *in limine* to exclude the EEOC and KUIC determinations at trial will be granted.

**IV.**

Based on the foregoing discussion and analysis, it is

**ORDERED** that:

1. Defendant Walle Corporation's Motion *in limine* [Record No. 17] is **GRANTED**, in part, and **DENIED**, in part.

2. Unless Plaintiff Deming Smith obtains prior approval from the Court, Smith, including his attorneys and witnesses, shall be prohibited from offering evidence at trial regarding damages for humiliation or embarrassment or evidence regarding the final

determinations by the Equal Employment Opportunity Commission and Kentucky Unemployment Insurance Commission.

This 5th day of November, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge